## Coulter *versus* Selby.

### *Liability of Heirs for Debt of Ancestor.*

On the trial of a *scire facias quare ex. non*, to revive a judgment, against the widow and heirs of a decedent, the court refused to allow the defendants to amend and plead " That they took nothing by descent." *Held*, that such refusal was not error : for the judgment against the heirs would bind only the lands of their ancestor, in their hands, and could not be enforced against them personally.

ERROR to the District Court of *Philadelphia.*

On the 17th of October 1832, judgment was obtained by James Selby against John Coulter for $5624.88. This judgment was from time to time revived, the last entry being on the 28th of May 1856, for $18,487.89. On the 22d of September 1859, the death of John Coulter was suggested, and the substitution of Ashton, as his administrator, made upon the record. John Coulter died on or about the 16th day of December 1857.

A *scire facias* to revive judgment, *et quare executionem non*, was then issued to September Term 1859, No. 901, as follows :— James Selby *v.* Samuel K. Ashton, administrator, &c., with notice to Ann Coulter, Paschall H. Coulter, Stephen R. Coulter, Levi Coulter, Day Coulter, and John B. Champion and Nancy his wife, late Coulter, the said Ann, Paschall H., Stephen R., Levi, and Day Coulter, and Nancy Champion, being the widow and heirs at law of the said John Coulter, deceased.

To this writ, the sheriff returned *"nihil,"* as to Levi and Day Coulter, and "made known," as to the other defendants.

The defendants, who had been served with process, pleaded *nul tiel record,* and payment ; and on the trial, on the 23d of November 1860, asked leave to file the following plea :—

And for a further plea in this behalf, the defendants, Ann Coulter, Paschall H. Coulter, Stephen Coulter, and John B. Champion and Nancy his wife (who, together with Levi Coulter and Day Coulter, as to whom the sheriff returned *"nihil habent,"* are named in the said writ as the widow and heirs at law of John Coulter, deceased), by leave of the court obtained, say that the said plaintiff ought not to have and maintain his aforesaid action thereof against the said defendants, because they say that they, the said defendants, have taken and hold nothing by descent

[Coulter *v.* Selby.]

from the said John Coulter, deceased, as his heirs and legal representatives, and this they are ready to verify.

The court refused leave to file this plea, and the jury found a verdict for the plaintiff for $23,467.30.

Judgment having been entered on the verdict, the defendant sued out this writ, and assigned for error here the refusal of the court below to allow said plea to be filed.

*Wm. Henry Rawle* and *George M. Wharton*, for plaintiff in error.—The point presented by this record is, whether in an action to revive a judgment against the heirs of a deceased defendant, they can be permitted to show that, as heirs or devisees, they take and hold nothing by descent from their ancestor.

The Act of February 28th 1834, § 25, provides that judgments which are a lien at the death of the defendant, shall continue to bind the real estate of deceased during the term of five years from his death, although not revived by *sci. fa.* or otherwise, and shall rank according to priority at the time of such death, and, after the expiration of such term, shall not continue a lien on the real estate of the decedent as against a *bonâ fide* purchaser, mortgagee, or other judgment-creditor of such decedent, unless revived by *sci. fa.* or otherwise, *according to the laws regulating the revival of judgments.* The "laws" here referred to are those of April 4th 1798, sections 2, 3, which must not be confounded with those which refer to judgments obtained since the death of debtor. It relates exclusively to judgments *inter vivos*—those recovered against a debtor in his lifetime : Fetterman *v.* Murphy, 4 Watts 424 ; Konigmacher *v.* Brown, 2 Harris 273 ; Aurand's Appeal, 10 Casey 151.

When the defendant is thus dead, the service must be made on the heirs in the legal sense—persons taking by descent, and being thus made parties *as* heirs, they should be permitted to show that, as such heirs, they have nothing by descent from their ancestor. Else it might be said that, by being brought into court by writ, by their appearance, and by permitting the judgment to be revived against them as heirs, they shall not be permitted hereafter to show that they are not heirs—that they take nothing by descent: Drum *v.* Kelly, 10 Casey 417 ; Colburn *v.* Trimpey, 12 Id. 463.

There was no printed argument for defendant in error.

The opinion of the court was delivered, July 24th 1861, by

THOMPSON, J.—The error assigned is to the refusal of the court to allow the widow and heirs to amend and plead to this *sci. fa. quare ex. non,* that they took nothing by descent from their intestate. The plea, beside being a novelty, was of no use

[Coulter *v.* Selby.]

to them.   The object of the *sci. fa.* was not an action to estab-
lish a debt, but simply to authorize execution on an existing
judgment, if cause to the contrary were not shown by the heirs
or terre-tenants.   Satisfaction was not to be had of *them* person-
ally, because they might not be able to show cause why execution
should not issue.   It is true, judgment *quod recuperet* is in form
the judgment in such case; but the *sci. fa.* itself shows where
the debt is, and the object of the writ.   It does not, like a sum-
mons, demand a debt, but simply calls on them to show any legal
cause why the sum found due against their ancestor shall not be
paid out of his estate.

Previously to the statute of Westm. 2, 13 Ed. 1, if execution
were not issued within a year and a day after judgment, the
plaintiff was obliged to resort to an action of debt on his judg-
ment.   This was owing to a presumption of payment or satisfac-
tion within that time.   It was a troublesome remedy, and to
amend it the statute cited was passed (2 Sand. R. part 2, p. 5,
n. 1) authorizing a *sci. fa.* in personal actions.   When the de-
fendant in the action happened to die before execution, and it
became necessary to revive the judgment, the heir was required
to be served; for he was held to be chargeable as terre-tenant,
and not as heir, and an action of debt did not lie against
him on a judgment or recognisance, as it did on the bond of his
ancestor, but a *sci. fa.* only to have execution of the ancestor's
lands in his hands : 3 Rep. 12; Sir W. Harbst's Case, Dyer 271,
a. pl. 25; Sir W. Jones 87, 88; Boyer *v.* Hivott (S. C.) Butler
317, Palm. 419, Poph. 152; 2 Sand. R. part 1, n. 27.

The Act of 1798 was but an embodiment of the practice under
the English statute.   The widow and heirs are regarded in the
light of terre-tenants, for the law of descent casts the title upon
them, and if they cannot show any reason, such as payment,
satisfaction, release, or something sufficient to prevent execution,
they will be concluded by the judgment, and that will, if in form,
be that the land of the ancestor, bound by the judgment, be
taken in execution for the debt recovered against him.   It created
no personal liability as against the heirs, any more than a reco-
very does against any other terre-tenant; and no one pretends
that in such case it extends beyond the lands of the debtor in
his possession or claim.   So, like a terre-tenant, the heirs are
concluded by the judgment, if, after being warned, they fail to
set up any defence they might have against the award of execu-
tion or recovery on the *sci. fa.*   They cannot, I apprehend, after-
wards contest the right in ejectment: Drum *v.* Kelly, 10 Casey 417.

This very question was discussed and settled, however, in
Coyle *et al. v.* Reynolds *et al.*, 7 S. & R. 328.   There it was held
that a judgment against the heir and a terre-tenant on a *sci. fa.*,
on a judgment against the ancestor, without specifying what land

[Coulter *v.* Selby.]

it was to affect, binds only the lands of the ancestor in their hands, and cannot be enforced against them personally. There the plea was *payment;* the other plea of the terre-tenant, that he was a purchaser for a valuable consideration, was a nullity; for that would not protect him if the lands were bound by the judgment when he purchased. This case, as well as the principle referred to, sufficiently determines the question that the plea offered, the rejection of which is the alleged error in the case, was of no practical value whatever, and its rejection did the plaintiffs in error no harm, and can do none. The practice is well settled to this effect, and for the sake of mere symmetry in proceedings, we will not hold that any greater precision in cases of this kind is now necessary than formerly. It might lead to injurious doubts about the effect of former proceedings in like cases.

In the outset, I spoke of the plea as something of a novelty; perhaps it might have turned out, had it been received and traversed by the other party, a costly one. On the death of the ancestor, his estate not devised certainly descended to his heirs. That it may have been encumbered, and for that reason of no value to them, makes no difference. To them the title goes. They are the legal successors to it, and so it stands until divested; so that the issue would have been against the defendants, if taken on their plea. Thus, instead of a judgment, that execution should go to charge the estate as in ordinary cases, the judgment would probably in strictness have been against them personally. But it is not necessary to decide definitely what effect the plea might have had if received. Suffice it, the plaintiff in error was not injured by the refusal, and the

Judgment is affirmed.